# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 6, 2012

## LARRY C. PITTMAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-11-155      Roger A. Page, Judge**

---

**No. W2011-02024-CCA-R3-PC  - Filed May 10, 2012**

---

The petitioner, Larry C. Pittman, appeals the dismissal of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel.  Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Lee R. Sparks, Jackson, Tennessee, for the appellant, Larry C. Pittman.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner was convicted by a Madison County Circuit Court jury of aggravated robbery, conspiracy to commit aggravated robbery, and especially aggravated kidnapping and was sentenced by the trial court as a Range II offender to an effective sentence of sixty-six years at thirty-five percent release eligibility.  His convictions and sentences were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  State v. Larry Carnell Pittman, No. W2007-00589-CCA-R3-CD, 2009 WL 1025870, at *1 (Tenn. Crim. App. Apr. 7, 2009), perm. to appeal denied (Tenn. Nov. 12, 2010).

Our direct appeal opinion reveals that the petitioner's convictions stemmed from his November 27, 2005 robbery of a Lone Star Steakhouse in Jackson, where he had been terminated from employment the previous week. Id. at *1-2. The State presented evidence to show that one of the petitioner's former co-workers, Josh Irvin, assisted the petitioner in the robbery by preventing the doors from closing as he left the restaurant at the end of his shift, thereby allowing the masked and black-garbed petitioner to enter the building. Once inside, the petitioner forced the manager at knifepoint to open the safe, took all the money, and then walked the manager to the kitchen, where he shoved her inside the walk-in cooler. Id. at *2-10.

The robbery took place between 11:10 and 11:20 p.m. Id. at *1. Less than two hours later, the petitioner, who was dressed in black clothing and had a black, plastic bag containing $4768 in cash that was packaged in the same manner as the cash stolen from the restaurant, was stopped by the police as he pushed his bicycle down the street approximately 2.3 miles from the restaurant. Id. at *7-8. The store manager testified that, although the robber was masked, his body build and voice were similar to those of the petitioner and that she believed "unequivocally, beyond a reasonable doubt," that the petitioner was the man who committed the offenses. Id. at *5. The petitioner testified that the $4768 that the police found on him the night of the robbery was a combination of his own money and some money he had found that night after seeing someone throw a plastic bag out the window of a car. Id. at *11. He also said that he told the police at the time they arrested him that he had won the money gambling because he did not think they would believe his story about finding the money. Id.

On June 15, 2011, the petitioner filed a *pro se* petition for post-conviction relief in which he alleged that he was denied the effective assistance of trial counsel. Post-conviction counsel was appointed and an amended petition filed in which the petitioner alleged that counsel provided ineffective assistance by failing to adequately meet with him, failing to discuss trial strategy and defenses, and failing to adequately investigate the case prior to trial.

At the evidentiary hearing, the petitioner testified that trial counsel, who had been hired by his son, met with him only two times prior to trial. He said counsel never discussed the evidence against him, other than the fact that he had been found with money, never discussed any trial strategy with him, and failed to investigate the case. He stated that trial counsel wanted him to accept a plea offer of twenty years, but he refused because he did not commit the robbery. In his opinion, counsel did not do a very good job representing him at trial.

Trial counsel, who said he was licensed to practice law in 2001, testified that at the time he was hired to represent the petitioner, approximately half of his practice consisted of

criminal defense. The public defender's office originally represented the petitioner but approximately one month prior to trial, one of the petitioner's family members, Adrian Powell, contacted him about taking over the case. Trial counsel said that he discussed the short period before trial with Mr. Powell before he agreed to take the case, explaining that he might or might not be able to get a continuance, but if he did not, he would be ready for trial on the scheduled date.

Trial counsel testified that he met with the petitioner four different times before trial and was fully prepared to try the case. Although he did not record the total number of hours he spent, his practice anytime he met with a client in jail was to mark off the entire day for the trip and to spend at least half of the day at the jail. He stated that he and the petitioner therefore had lengthy conversations during which they discussed "anything and everything that there was to talk about." The case was fairly straightforward, and he could not think of anything he could have done differently in the case.

On cross-examination, trial counsel testified that he and the petitioner discussed everything that was related to the trial, including what his explanation would be for having "thousands of dollars on him in the early morning hours on the street in the middle of the rain, riding his bicycl[e] down the road." He said he felt that he had adequate time to investigate the case, which was why he did not initially ask for a continuance. However, a day or two before trial, the victim received a couple of letters purporting to be from the Federal Bureau of Investigation ("FBI") and the police department, which stated that the investigating police officer in the case was under investigation. He, therefore, asked for a continuance on the morning of trial, which was denied after a hearing. Trial counsel stated that he never investigated the source of the letters because at the hearing, someone from the FBI testified that the agent who had purportedly written and signed the letter had not worked for the FBI in years and that the signature on the letter was not his. In addition, the letters contained grammatical errors, and it became clear at the hearing that there was no basis for the allegations contained in them.

On August 23, 2011, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner had failed to meet his burden of showing that he received ineffective assistance of counsel. This appeal followed.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State,

922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The petitioner contends that trial counsel provided ineffective assistance by failing to adequately meet with him prior to trial, failing to discuss trial strategy or possible defenses, and failing to adequately investigate his case prior to and following the trial. With respect to the latter contention, he argues that trial counsel should have investigated the possible exonerative evidence contained in the letters received by the alleged victim and that his failure to do so prejudiced the case.

-4-

However, trial counsel's testimony, which was specifically accredited by the post-conviction court, established that counsel met with the petitioner on four different occasions, had extensive discussions with him about the evidence and possible defenses, thoroughly investigated the case, and was fully prepared for trial. Trial counsel also explained his failure to pursue the allegations in the letters received by the victim, testifying that he was satisfied from the evidence presented at the hearing that the letters were not authentic and their allegations without merit. We conclude, therefore, that the post-conviction court properly found that the petitioner failed to meet his burden of demonstrating that he received ineffective assistance of counsel.

## **CONCLUSION**

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was deficient in his performance or that he suffered any prejudice as a result of counsel's alleged deficiencies. Accordingly, we affirm the judgment of the post-conviction court dismissing the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE